IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

CRIMINAL ACTION NO.
1:22-cr-00183-SCJ-RDC-1

JOHN W. OXENDINE,

Defendant.

## <u>ORDER AND FINAL REPORT AND RECOMMENDATION</u>

Pending before this Court are five motions filed by Defendant John W. Oxendine: Motion to Dismiss Superseding Indictment, [Doc. 22], Motion to Dismiss Count Two as Time Barred, [Doc. 51], Motion to Suppress Statements, [Doc. 24], Motion for Bill of Particulars, [Doc. 23], and Motion to Strike Surplusage, [Doc. 25]. The Government filed briefs opposing these motions on July 14, 2023, [Docs. 56, 57, 58, 59, and 60]. Mr. Oxendine filed replies in response to these pleadings on July 28, 2023, [Docs. 62, 63 and 64]. This Court held an evidentiary hearing to receive evidence related to the Motion to Suppress Statements on February 15, 2023. (R. 33).

**Factual and procedural background**

Mr. Oxendine has been named in a two-count Superseding Indictment that charges him with crimes involving health care fraud and money laundering. [Doc. 43].   Count One alleges that he did knowingly and willfully "combine, conspire, confederate, agree, and have a tacit understanding with others known and unknown to the Grand Jury, to commit an offense against the United States, to wit, to knowingly and willfully execute and attempt to execute a scheme and artifice to defraud Aetna, Blue Cross Blue Shield, United Healthcare, and other health care insurance providers, which are health care benefit programs affecting commerce as defined in Title 18, United States Code, Section 24(b), and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Aetna, Blue Cross Blue Shield, United Healthcare, and other health care insurance providers in connection with the delivery of and payment for health  care benefits, items, and services, in violation of Title 18, United States Code, Section 1347."[Id. at 1-2].

The Superseding Indictment also states that he and others, known and unknown to the grand jury, allegedly executed this health care fraud scheme by causing "to be submitted to Aetna, Blue Cross Blue Shield, United Healthcare, and other health care insurance providers, fraudulent insurance claims for medically unnecessary

Pharmacogenetic, Molecular Genetic, and Toxicology testing. In furtherance of the scheme, physicians associated with Dr. Jeffrey Gallups's ENT practice in the Northern District of Georgia and elsewhere were pressured to order medically unnecessary Pharmacogenetic, Molecular Genetic, and Toxicology testing from a testing lab in Texas (the Lab Company). As part of the health care fraud scheme, the Lab Company and defendant OXENDINE and Dr. Gallups entered into an agreement whereby Dr. Gallups would receive a kickback of 50% of the net profit for eligible specimens submitted by Dr. Gallups's practice to the Lab Company for Pharmacogenetic, Molecular Genetic, and Toxicology testing. The Lab Company paid the kickbacks to Dr. Gallups through defendant OXENDINE. Defendant OXENDINE retained a portion of the kickbacks and used a portion of the kickback money to pay certain debts of Dr. Gallups." [Doc. 43 at 2].

Additionally, Mr. Oxendine and Dr. Gallups allegedly persuaded representatives of the Lab Company to order the unnecessary tests "even after the owner of the Lab Company questioned why an ENT practice would need such testing." [Doc. 43 at 3]. The Superseding Indictment also states that the Defendant paid a portion of the kickbacks he received by making charitable donations "and paid expenses, including attorney's fees, on behalf of Dr. Gallups. Specifically, defendant OXENDINE made a charitable donation of $150,000 on behalf of Dr. Gallups in or

about September 2016. Defendant OXENDINE also paid $70,759.54 to a law firm on behalf of Dr. Gallups in or about December 2016. After making these payments, defendant OXENDINE retained over $40,000 of the payments from the Lab Company. All in violation of Title 18, United States Code, Section 1349." [Doc. 43 at 5-6].

Count Two charges Mr. Oxendine with conspiring  to commit money laundering with others, known and unknown to the grand jury, by conducting and attempting to conduct "financial transactions affecting interstate commerce, which involved the proceeds of a specified unlawful activity, that is, health care fraud, in violation of Title 18, United States Code, Section 1347, knowing that the financial transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and while conducting and attempting to conduct such financial transactions, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(l)(B)(i)" [Doc. 43 at 6]. The Superseding Indictment also includes a forfeiture provision seeking the seizure of any United States currency representing the amount of the proceeds obtained by the Defendant as a result of the commission of the charged offenses. [*Id.*  at 7].

Mr. Oxendine was arraigned on the Superseding Indictment on May 17, 2023. (R. 7; 49). He had previously filed pretrial motions on November 4, 2022, following his arraignment on the original Indictment. [Docs. 22, 23, 24 and 25]. On May 31, 2023, he filed two additional motions: Motion to Dismiss Count Two as Time Barred and Motion to Adopt and Incorporate his previously filed motions. [Docs. 51, 52]. The latter was granted on August 18, 2023. [Doc. 65].

After careful review of Defendant's pleadings, the Government's responses, the transcript of the evidentiary hearing ([Doc. 34] (hereafter "Tr.") and the applicable law, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss Superseding Indictment, [Doc. 22], be **DENIED**; **RECOMMENDS** that Defendant's Motion to Dismiss Count Two as Time Barred, [Doc. 51], be **DENIED**; **RECOMMENDS** that Defendant's Motion to Suppress Statements, [Doc. 24], be **DENIED**; **ORDERS** that Defendant's Motion for Bill of Particulars, [Doc. 23], is **DENIED**; and **RECOMMENDS** that Defendant's Motion to Strike Surplusage, [Doc. 25], be **DENIED**.

## <u>LEGAL ANALYSIS</u>

**A.** <u>**Defendant's Motion to Dismiss The Superseding Indictment and Motion to Dismiss Count Two as Time Barred**</u>

Mr. Oxendine claims that the Superseding Indictment is constitutionally infirm in violation of the Due Process Clause of the Sixth Amendment and Fed. R. Crim. P. 7 (c)(1). [Doc. 22 at 1-2].  He asserts that it must be dismissed because it fails to allege knowledge of criminal intent and, because the health care fraud statute carries a "heightened burden of intent," a violation of this statute can only be sustained if he is " 'shown to have known that the claims submitted were, in fact, false.'" [Doc. 22 at 3] (citation omitted). Mr. Oxendine also argues that the Superseding Indictment is unconstitutionally vague because it does not " include enough facts and circumstances to inform [him] of the specific offense being charged." [*Id*. at 2].  Furthermore, he avers that  the "Manner and Means" section is factually insufficient because it "vaguely outlines" the conduct that allegedly constitutes conspiracy to commit health care fraud and "fails to allege any element of knowledge on the part of Mr. Oxendine." [*Id.* at 4].  Because the charging document alleges acts that "are not violations of the law," he continues, it merely "casts a shadow of culpability upon [him]." [ *Id.*].

Mr. Oxendine also submits that the Superseding Indictment is due to be dismissed because it was returned beyond the five-year statute of limitations; claiming that only one overt act – an innocuous $42 payment to Oxendine Insurance Services – occurred during that term. [Doc. 22 at 7].  Because all of the other alleged overt acts occurred outside the five-year statute of limitations term, he asserts,   the

Government's attempt to "bootstrap the entire case onto this one check" is improper. [*Id.* at 8].

As for Count Two which charges Conspiracy to Commit Money Laundering, Mr. Oxendine claims that it must be dismissed as time barred because it "fails to allege acts of money laundering which occurred within the statutory timeframe." [Doc. 51 at 2]. He specifically argues that the payments he allegedly made on Dr. Gallups's behalf in September and December 2016 preceded the date of the filing of the original Indictment – May 17, 2022 – by nearly six years. [*Id.*].  Because "the latest act alleged in the indictment to be an act of money laundering occurred in December of 2016 – five months before the limitation period began," he asserts, this Count is barred by the statute of limitations. [*Id.* at 3].[1]

The Government submits that all of these claims are meritless. [Doc. 56].  It asserts that the Superseding Indictment alleges all of the essential facts regarding the alleged health care fraud conspiracy by specifically describing the nature of the

---

[1]  Mr. Oxendine has also argued that Count Two is time barred because it  initially alleged that the conspiracy ran from June 2006 until June **2022 –** one month after the original Indictment was returned. [Doc. 22 at 6].  The  Government conceded this typographical error and corrected the timeline in the Superseding Indictment. [Doc. 43 at 6].  Thus, the objection to the timeliness of Count Two on this basis is moot and will not be addressed by the Court.

offense, the co-conspirators' unlawful conduct and Mr. Oxendine's role in furthering the goals of the offense even if he "was unaware of every aspect of the conspiracy." [Doc. 56 at 8].  It also argues that Mr. Oxendine's claim that the Superseding Indictment fails to allege the relevant elements of the charged offenses reveals his misapprehension of the applicable law.  According to the Government, he has conflated the elements of conspiracy to commit health care fraud with a substantive health care fraud offense, citing Eleventh Circuit precedent that holds that an indictment charging a conspiracy "need not be as specific as an indictment for a substantive count" and that it need only prove that he knew of the essential nature of the conspiracy. [Doc. 56 at 7-8] (citations omitted).

The Government also asserts that the challenges to the timeliness of the charges are flawed because neither count was brought outside the five-year statute of limitation period. [Doc. 56 at 10-11].  It notes that because both charges involve alleged conspiracies, the Superseding Indictment need only allege that the unlawful conduct continued into the requisite five-year statute of limitations period. [*Id.*].  Because Count One alleges that the health care fraud conspiracy began in late 2015 and continued until June 2017, less than five years before the original Indictment was returned,  it does not run afoul of the statute of limitations. The Government also

argues that because the money laundering conspiracy described in Count Two ran from June 2016 until June 2017, it should not be dismissed on this basis. [*Id.* at 11].

## Discussion

The Fifth Amendment provides that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. The Sixth Amendment guarantees that "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed…and to be informed of the nature and cause of the accusation." U.S. Const. amend. VI. These rights, as well as the Due Process Clause of the Fifth Amendment, are brought to bear when a defendant challenges the sufficiency of an indictment. <u>See</u>, *Russell v. United States,* 369 U.S. 749, 761 (1962).

Pursuant to Fed. R. Crim P. 12 (b)(3)(B)(iii), a defendant may file a motion to dismiss an indictment for failure to provide sufficient specificity. Fed. R. Crim. P. 7 (c)(1) provides that: "[t]he indictment or information must be a plain, concise, and definite statement of the essential facts constituting the offense charged and must be signed by the attorney for the government. It need not contain a formal introduction or conclusion. A count may incorporate by reference an allegation made in another count. A count may allege that the means by which the defendant committed the

offense are unknown or that the defendant committed it by one or more specified means. For each count, the indictment or information must give the official or customary citation for the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated."

In ruling on this motion, this Court is limited to reviewing the face of the indictment. *United States v. Salman,* 378 F.3d 1266, 1268 (11th Cir. 1999). It is well-established that "[t]here is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence." *United States v. Critzer,* 951 F.2d 306, 307 (11th Cir.1992). However, merely reciting the elements of the applicable statutes is not sufficient if the indictment fails to put the Defendant on fair notice of the charges he faces: " 'Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged.' " *Hamling v. United States,* 418 U.S. 87, 117(1974) (quoting, *United States v. Hess,* 124 U.S. 483, 487 (1888)).

The Supreme Court adopted the following test to determine whether an indictment is sufficient:

> [A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against

which he must defend, and, second, enables him to plead an acquittal
or conviction in bar of future prosecutions for the same offense.

*Hamling,* 418 U.S. 87, 117 (1974)(citing, *Hagner v. United States,* 285 U.S. 427,

(1932)). "When the indictment uses generic terms, it must state the offense with

particularity." *United States v. Bobo*, 344 F.3d 1076, 1083 (11ᵗʰ Cir. 2003).

Consequently, an indictment that fails to apprise the defendant "with reasonable

certainty, of the nature of the accusation against him…is defective,…although it may

follow the language of the statute." *United States v. Simmons*, 96 US. 360, 362 (1877).

In the case at bar, Mr. Oxendine asserts that the factual scenario outlined in the

Superseding Indictment is constitutionally deficient because it fails to allege he had

any knowledge that the claims submitted by Dr. Gallups's practice were false.  He

also argues that his presence at the meeting in Texas "does not constitute knowledge

of an unlawful agreement." [Doc. 22  at 4.  Further, he claims that Count One fails

to reveal what he allegedly understood about the necessity of the tests that were

ordered by the physicians, leaving one to infer "how [he] knew, at the time he gave

his speech, that the testing was not medically necessary, or that he even had the ability

or capacity to make that determination." [*Id*.]. These omissions, he asserts, fail to

establish that the agreement he allegedly made with the co-conspirators consisted of

a scheme to defraud or that he knew that the payments he subsequently received were

derived from the Lab Company's unlawfully activity. Finally, he avers that the

Superseding Indictment is deficient because it fails to allege that he had any authority to order the medical tests and that the assertion that he caused fraudulent claims to be submitted to the insurance companies is specious at best. [*Id*. at 5].

The Government submits that these claimed errors are unsupported by the facts offered in the Superseding Indictment and the applicable law. First, it argues that the Superseding Indictment contains the essential elements of the conspiracy statute – 18 U.S.C. § 1349 – and the health care fraud statue – 18 U.S.C. § 1347. [Doc. 56 at 5]. It also meticulously describes the co-conspirators' roles in pressuring the physicians associated with Dr. Gallups's practice to order the tests and "although not required to pass constitutional muster, [it] also discusses specific meetings in which Oxendine and his co-conspirators discuss the conspiracy, and a Ritz Carlton speech in which Oxendine told doctors to order unnecessary testing for their patients." [*Id*. at 6]. Based on these specific facts, coupled with the statutory language provided for each of the charged offenses, the Government argues that the Superseding Indictment "goes well beyond what is required to state the essential facts of the health care conspiracy."[*Id*.] .

This Court agrees. Count One  specifically alleges that on September 19, 2015, Mr. Oxendine gave a speech during a meeting sponsored by Dr. Gallups's practice where he told the attending doctors that they needed to order the testing for their

patients; tests that the Lab Company falsely represented were medically necessary. [Doc. 43 at 4]. In furtherance of the alleged conspiracy, Dr. Gallups executed written agreements with the Lab Company that explained that his practice would receive 50% of the net profits of the testing it performed and that the Company would retain the remainder. [*Id.* at 3-4]. Notably, this Count also alleges that Mr. Oxendine executed similar agreements with the Lab Company that included a provision that "changed the payment of the 50% kickback from Dr. Gallups's practice to defendant Oxendine's insurance business." [Doc. 43 at 3-4].

Furthermore, Count One reveals that the Lab Company submitted claims seeking more than $2,500,000 in payments for laboratory tests ordered by Dr. Gallups's practice. [Doc. 43 at 4]. It also states that in June 2016, the Lab Company began sending monthly checks to Mr. Oxendine's insurance services businesses for testing referrals. [*Id.* at 8]. These monthly payments, commencing with one for $227,066.56, were for tests performed "for patients for whom there was no medical necessity." [*Id.* at 5]. Lastly, Count One alleges that portions of the kickbacks paid by Mr. Oxendine to Dr. Gallups were made in the form of charitable donations and attorney's fees, although Mr. Oxendine retained more than $40,000 of the payments he received from the Lab Company. [*Id*. at 6].

As for the Money Laundering Count, the Superseding Indictment alleges that Mr. Oxendine, with the assistance of known and unknown co-conspirators, "deposit[ed] checks sent to him by the Lab Company into his insurance services business…[and]…into his own account even though the checks resulted from fraudulent claims submitted by the Lab Company for laboratory tests ordered by Dr. Gallups's practice." [Doc 43 at 7].   It also states that the payments Mr. Oxendine allegedly approved from his business accounts were made to Dr. Gallups's practice at Dr. Gallups's direction. [*Id.*].

All of these facts sufficiently inform Mr. Oxendine of the nature of the facts and circumstances giving rise to the pending charges and put him on notice regarding the particular conduct the Government deems unlawful. Although he asserts that the Superseding Indictment does not allege that he had knowledge of the illegality of his co-conspirators' conduct, an indictment satisfies the Fifth Amendment if "the facts alleged in the indictment warrant an inference that the jury found probable cause to support all the necessary elements of the charge." *United States v. Fern*, 155 F.3d 1318, 1325 (11th Cir.1998); *United States v. Seher*, 562 F.3d 1344, 1356 (11th Cir. 2009). And as previously stated, "[t]here is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence." *Critzer,* 951 F.2d at 307. Mr. Oxendine may vigorously challenge the

strength of the Government's case and its allegation that he was a knowing participant in the alleged conspiracies. However, those challenges are to be presented to the finder of fact. <u>See</u>, *United States v. Mateos*, 623 F.3d 1350, 1362 (11th Cir. 2010) ("While it is hypothetically possible that a person under these circumstances could have been ignorant of the [conspiracy to commit healthcare] fraud, the jury was entitled to draw the reasonable inference from this evidence that [the defendant] was in on the scheme."); <u>See Also</u>, *United States v. Patel*, 2021 WL 2550477 (S.D. Fla., June 21, 2021), at *4 ("[E]ven if the Court were to accept Patel's position that Medicare is required to cover USPSTF-recommended screening tests, the question of whether the CGx tests billed by Patel fell within this USPSTF recommendation—or were otherwise billed in a manner that Medicare covers—is a factual issue that cannot be resolved on a motion to dismiss."). Thus, this Court finds that Mr. Oxendine's constitutional challenges to the Superseding Indictment are meritless.

Mr. Oxendine also argues that the Superseding Indictment must be dismissed because it was filed outside the five-year statute of limitations period, claiming that because he was originally indicted on May 17, 2022, an overt act must have occurred on or after May 17, 2017, to fall within the statute of limitations. [Doc. 22 at 8].

The Government claims this argument is legally and factually flawed for two reasons. First, because both of the charged offenses involve conspiracies, it is not

required to plead an overt act. [Doc. 56 at 10].  See, *Whitfield v. United States*, 543 U.S. 209, 215 (2005) (We have consistently held that the common law understanding of conspiracy 'does not  make the doing of any act other than the act of conspiring a condition of liability.' ")(internal citation omitted);  *United States v. Abrue*, 976 F.3d 1263, 1272 (11th Cir. 2020)(explaining that conspiracy to commit healthcare fraud does not require an overt act).

Secondly, the Government emphasizes that the alleged health care fraud conspiracy began in September, 2015 and continued until June, 2017 – less than five years before the original indictment was returned. [Doc. 56 at 10]. It also notes that Mr. Oxendine conceded that the Superseding Indictment alleges that he received a check as part of the alleged health card fraud conspiracy on or about June 14, 2017, well within the five-year statute of limitations period.  The same holds true for Count Two which incorporates by reference the timeline of events alleged in Count One and specifies that at least one payment was made on June 14, 2017. [Doc. 56 at 11]. As a result, the Government avers that both counts of the Superseding Indictment were timely filed.

The Government's arguments are persuasive. A conspiracy is deemed to have continued as long as the purposes of the conspiracy have neither been abandoned nor accomplished and the defendant has not made an affirmative showing that the alleged

conspiracy has terminated. *United States v. Gonzalez,* 921 F.2d 1530, 1548 (11th Cir.1991) (<u>citing</u>, *United States v. Coia,* 719 F.2d 1120, 1124 (11th Cir. 1983)). Moreover, "The government satisfies the requirements of the statute of limitations for a non-overt act conspiracy if it alleges and proves that the conspiracy continued into the limitations period." *United States v. Arnold,* 117 F.3d 1308, 1313 (11th Cir.1997). As the Superseding Indictment in the instant case clearly reveals, the alleged criminal conduct extended into the five-year statute of limitations period. Although it is still to be proven beyond a reasonable doubt that the $42 check Mr. Oxendine allegedly received was derived from unlawful conduct, it was nonetheless paid during the five-year statute of limitations period. Accordingly, the undersigned R**ECOMMENDS** that **BOTH** the Motion to Dismiss Superseding Indictment and the Motion to Dismiss Count Two as Time Barred be **DENIED**.

### B.  Defendant's Motion to Suppress Statements

 In Mr. Oxendine's Motion to Suppress Statements, he submits that statements he made to Special Agents Ryan Campos and Allison Montello during a non-custodial interview at his home are inadmissible because they were obtained in violation of the Fifth Amendment. [Doc. 24].  He alleges that his statements should be suppressed because these agents "refused to leave after he requested they speak another time," and continued to question him on topics he knew nothing about, thereby creating a

"hostile and coercive environment in which [his] will was ultimately overborn (sic)." [*Id*. at 4].

The Government argues that this claim should be denied, noting that nothing in the recorded interview or the testimony presented during the evidentiary hearing establishes that Mr. Oxendine's statements were involuntary or that the agents engaged in coercive conduct. [Doc. 58]. It also submits that the totality of the circumstances, including Mr. Oxendine's statement that he would be willing to answer the agents' questions, belie his argument that his statements were involuntary. [*Id.* at 2; 5-6]. His failure to produce evidence substantiating his allegation that his statements were the product of coercive conduct, it argues, renders his motion meritless. [*Id.* at 5].

## Discussion

"[A] defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession[.]" *Jackson v. Denno*, 378 U.S. 368, 378 (1964); *United States v. Bernal-Benitez*, 594 F.3d 1303, 1317-18 (11th Cir. 2010); *Miller v Fenton*, 474 U.S. 104, (195). Whether a statement was voluntarily given must be examined in light of the totality of the circumstances, See, *Schneckloth, v. Bustamonte* 412 U.S. 218,226 1973); *United States v. Thompson*, 422 F.3d 1285, 1295 (11th Cir. 2005); *Hubbard v. Haley*, 317 F.3d 1245, 1252 (11th

Cir. 2003), and includes factors such as whether: (1) law enforcement officers provided *Miranda* warnings, *Beckwith v. United States*, 425 U.S. 341, 348 (1976); (2) the interrogation lasted for a lengthy period of time, *Davis v. State of North Carolina*, 384 U.S. 737, 752 (1966); *Thompson*, 422 F.3d at 1296; (3) the defendant was mature, *id*.; (4) law enforcement officers relied on misrepresentations that induced the incriminating statements, *Frazier v. Cupp*, 394 U.S. 731,739 (1969); *United States v. Mitchell*, 966 F.2d 92, 100 (2ⁿᵈ Cir. 1992); (5) law enforcement  officers used force and threats of force,  *United States v. Thompson*, 422 F.3d 1285, 1296 (11ᵗʰ Cir. 2005); and (6) law enforcement officers made promises to induce the confession, *Thompson*, 422 F.3d at 1296; *United States v. Gonzalez*, 71 F.3d 819, 828 (11ᵗʰ Cir. 1996) <u>overruled on other grounds by</u>  *Arizona v. Gant,* 556 U.S. 332 (2009). This totality of the circumstances test directs the Court ultimately to determine whether a defendant's statement was the product of "an essentially free and unconstrained choice." *United States v. Garcia,* 890 F.2d 355, 360 (11ᵗʰ Cir. 1989); *Hubbard v. Haley,* 317 F.3d 1245, 1252 (11th Cir. 2003). Accordingly," '[t]he government bears the burden of proving ... that the consent was not a function of acquiescence to a claim of lawful authority but rather was given freely and voluntarily.'" *United States v. Hildago*, 7 F.3d 1566, 1571 (11ᵗʰ Cir.1993) (<u>quoting</u> *United States v. Blake*, 888 F.2d 785, 798

(11th Cir. 1989).  With these concepts in mind, the undersigned turns to the errors alleged by Mr. Oxendine.

In the case at bar, Special Agent Campos testified that she and Special Agent Montello arrived at Mr. Oxendine's home around 8:00 p.m. September 22, 2020.  (Tr. at 10).  Mr. Oxendine greeted them at the front door where he stood throughout the interview. (Tr. at 11-12).  Special Agent Campos explained that they were federal agents and wanted to question him about an on-going criminal investigation regarding a medical lab not related to the investigation involving the Superseding Indictment. (Tr. at 34).  According to Special Agent Campos, Mr. Oxendine said, "I would be happy to speak to you," and offered to schedule an appointment for a future meeting. (Tr. at 30).  Although she agreed to schedule a meeting for a later time, she testified that Mr. Oxendine "continued the conversation." (*Id*.).

During the interview, the agents remained outside of Mr. Oxendine's residence. (Tr. at 11-12).  Special Agent Campos described their interaction, which was recorded by Special Agent Montello, as a "casual encounter." (Tr. at 35; Gov't Ex. 1). Neither Agent displayed her weapon during the interview. (Tr. at 14). Special Agent Campos also stated that no federal criminal offenses were pending against Mr. Oxendine at the time of the interview, and that he was not a target of the unrelated investigation. (Tr. at 28).  Lastly, Special Agent Campos explained that she and her partner are of

small physical stature compared to Mr. Oxendine and that they never threatened him with arrest. (Tr. at 12; 16).

Based on Special Agent Campos's description of her interaction with Mr. Oxendine before, during and after the interview, the Government argues that his assertion that his statements were the product of coercion is baseless. This Court agrees. The conservational tone of the interview, described by defense counsel as "the laughing interview," undermines any contention that the officers created a coercive environment. The recording reveals that the conversation was lighthearted and did not involve threats or promises of leniency.  Mr. Oxendine's claims of coercion are simply unsupported by the record. The interview, conducted on the front steps of his own home, lasted no more than 20 minutes. Although armed, the agents never removed their weapons from their holsters. These facts, along with Special Agent Campos's explanation of her non-confrontational conduct, establish that Mr. Oxendine voluntarily agreed to submit to questioning devoid of any coercion. See, *United States v. Barry*, 479 Fed. App'x 279, 299 (11th Cir. 2012)(unpublished)(where court concluded that "although several officers were present executing search warrants prior to each of [defendant's] interviews, his statements were voluntary because, during each brief interview, [defendant] was not threatened or physically detained. The officers did not brandish their weapons, and [defendant] was

interviewed calmly in a private area. Under the totality of the circumstances, the evidence supports a conclusion that [defendant's] will was not overborne merely by the police presence prior to his interviews.").

What's more, this Court deems it highly unlikely that a defendant of Mr. Oxendine's professional pedigree – career politician and licensed attorney – would feel coerced into answering the Agents' questions as he stood unrestrained on the steps of his own home in public view of passersby. Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, application of physical force or the threat of force, or the making of a promise that induces the accused to confess. See, *Colorado v. Connelly*, 479 U.S. 157 (1986); *United States v. Castaneda-Castaneda*, 729 F.2d 1360, 1362-63 (11th Cir. 1984). Even isolated incidents of police deception, *id*; *Frazier v. Cupp*, 394 U.S. 731, 739 (1969), and discussion of realistic penalties for cooperative and non-cooperative defendants, See, *U.S. v. Mendoza -Cecelia*, 963 F.2d 1467, 1475 (11th Cir. 1992); *United States v. Nash*, 910 F.2d 749, 753 (11th Cri. 1990), are normally insufficient to preclude free choice.[2] In consideration of the totality of these circumstances, the

---

[2]   Mr. Oxendine's claim that the Agents' failure to inform him of his right to counsel requires suppression of his statement is also meritless. Because a suspect's Sixth Amendment right to counsel is not triggered until a prosecution has commenced, the fact that he was not informed of this right is of no import. *Kirby v. Illinois*, 406 U.S. 682, 695 (1972)( "it has been firmly established that a person's Sixth and Fourteenth

Government has established by a preponderance of the evidence that Mr. Oxendine's statements were voluntary and were not the product of coercion. Accordingly, the undersigned **RECOMMENDS** that Mr. Oxendine's Motion to Suppress Statements be **DENIED.**

### C. Defendant's Motion for Bill of Particulars

Mr. Oxendine seeks a bill of particulars because he alleges that the Superseding Indictment "fails to adequately inform [him] of the charges against him, beyond simply repeating the language of the statute." [Doc. 64 at 1]. He claims that this lack of clarity prevents him from being able "to comprehend exactly what the government is alleging." [Doc. 64 at 4]. As a result, he requests the following information:

1. Any communications, documents or other information that he was a party to an agreement between Dr. Gallups and the Texas lab company;

2. Any communications, documents or other information that he had actual knowledge that the agreement made between the Lab Company and Dr. Gallups in Texas was made to fraudulently increase the number of genetic tests ordered by Dr. Gallups's practice;

3. Any communications, documents or other information that he had actual knowledge that the genetic testing by Dr. Gallups's lab was not medically necessary;

4. Any communications, documents or other information that he had authority over the ordering of genetic testing;

---

Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him."). Mr. Oxendine's reliance on this constitutional principle is misguided.

5. Any communications, documents or other information that he received payments from what he knew was a fraudulent scheme;

6. Any communications, documents or other information that he was introduced or presented as someone with medical knowledge at the meeting at the Ritz Carlton hotel; and

7. Any communications, documents, or other information that he used the payments received from the Lab Company to continue, conceal, or promote the alleged fraudulent scheme.

[Doc. 23 at 2-3].

The Government objects to all of these requests, asserting that they consist of "the category of requests that have been rejected by the Eleventh Circuit." [Doc. 60 at 7]. It also claims that these requests would improperly compel "detailed explanations[s] of the specific evidence [it] intends to use to prove Oxendine's guilt." [*Id.* at 7].

### Discussion

Rule 7 of the Federal Rules of Criminal Procedure authorizes a court to direct the Government to file a bill of particulars. FED. R. CRIM. P. 7(f). "The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." *United States v. Warren*, 772 F.2d 827, 837 (11th Cir. 1985); *United States v. Cole*, 755 F.2d 748 (11th Cir. 1986). This Court has broad discretion in ruling on

requests for bills of particular. *Will v. United States,* 389 U.S. 90 (1967). However, "generalized discovery is not the proper function of a bill of particulars." *Warren,* at 837. A defendant is not entitled to a bill of particulars "with respect to information which is already available through other sources such as the indictment or discovery and inspection." *United States v. Rosenthal*, 793 F.2d 1214, 1227 (11th Cir. 1986*), modified on other grounds by*, 801 F.2d 378 (11th Cir. 1986). Further, a bill of particulars may not be used for the purpose of obtaining detailed disclosure of the government's case or evidence in advance of trial. See, *United States v. Perez*, 489 F.2d 51, 70-71 (5th Cir. 1973).[3] Moreover, it "cannot be used as a weapon to force the government into divulging its prosecution strategy; we do not allow defendants to "compel the government to detailed exposition of its evidence or to explain the legal theories upon which it intends to rely at trial." *United States v. Burgin*, 621 F.2d 1352, 1359 (5th Cir. 1980); *United States v. Maurya*, 25 F.4th 829, 837–38 (11th Cir. 2022).

As noted above, the Superseding Indictment supplies a plethora of information regarding the nature of the alleged conspiracies including when Mr. Oxendine and Dr. Gallups initialed the scheme, how they enticed their co-conspirators to join the scheme, what the co-conspirators intended to achieve, and how the alleged crimes

---

[3]   In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions rendered by the Fifth Circuit before October 1, 1981.

were consummated. In addition, the Government has already provided "voluminous discovery to Oxendine, consisting of over 45,000 documents, spanning over 140,000 pages. The discovery includes emails to and from Oxendine (and others), recordings of Oxendine, documents from Gallups' medical practice, and more. The discovery produced specifically identifies each patient for whom kickbacks were paid, the amount the Texas lab received in payment for those patients, monthly breakdowns of the costs to the Texas lab and the amounts of the kickbacks to Oxendine and Gallups, the checks reflecting those kickbacks written to Oxendine, Oxendine's bank statements reflecting his deposits of those kickback payments, documents reflecting Oxendine's payments from those kickbacks on behalf of Gallups, and Oxendine's agreement with the Texas lab to be paid the kickbacks, among other information." [Doc. 60 at 2].

Although Mr. Oxendine may prefer more specific information regarding his alleged knowledge of the illegality of the questionable medical testing, defendants are not entitled to "a bill of particulars detailing every single material representation the government intend[s] to show at trial." *United States v Holzendorf*, 576 F. App'x 932, 935 (11th Cir. 2014). Nor is a bill of particulars to be used "to provide defendants with all overt acts that might be proven at trial." *United States v. Rosenthal*, 793 F.2d 1214, 1227 (11th Cir.1986), modified on other grounds, 801 F.2d 378 (11th Cir. 1986).

In accordance with this precedent, and because the Government has already provided thousands of pages of discovery regarding Mr. Oxendine's alleged role in these offenses, he has failed to establish that a bill of particulars is required to allow him to prepare his defense, minimize the risk of prejudicial surprise, or prevent him from pleading double jeopardy in the future.  See, *United States v. Cantu,* 557 F.2d 1173, 1178 (5th Cir. 1977)(holding that where the evidence consists mainly of testimony by witnesses of conversations in which the defendant participated, of activity occurring in  defendant's place of business that he observed, and of arrests in the business parking lot which he witnessed, he "could hardly have been surprised by the government's proof at trial.")(citations omitted). Accordingly, the Motion for Bill of Particulars is **DENIED**.

### D. Defendant's Motion to Strike Surplusage

 Finally, Mr. Oxendine moves this Court to strike the term "kickbacks" from the Superseding Indictment. [Doc. 25 at 1].  He submits that this term – used repeatedly throughout the document – must be stricken because it is  "irrelevant, prejudicial,  and inflammatory." [*Id.*]. He also argues that the use of this term is unnecessary because the Superseding Indictment also describes the financial documents as "payments and checks," terms that do not connote corruption nor suggest that he is charged with violating the Anti-Kickback Statute.  [Doc. 25 at 4].

The Government objects to this request as well. [Doc. 59]  It argues that the utilization of the term "kickbacks," routinely used in indictments alleging conspiracies similar to the one charged in the instant case, is not inherently prejudicial nor irrelevant.  [*Id.* at 4-5].  "Because it accurately describes the scheme Oxendine and Gallups agreed to and undertook," it continues, the term should not be stricken. [*Id.* at 5].

## Discussion

Fed. R. Crim. P 7(d) provides that, "upon the defendant's motion, the court may strike surplusage from the indictment or information." To strike surplusage, the Defendant must satisfy a two-prong test.  *United States v. Awan*, 966 F.2d 1415 (11th Cir. 1992); *United States v. Anyanwu*,  2013 WL 1558712, at *4 (N.D. Ga. Mar. 12, 2013), report and recommendation adopted, 2013 WL 1561011 (N.D. Ga. Apr. 12, 2013). First, Mr. Oxendine must show that the language he seeks to strike is not relevant to the charges against him. *United States v. Williams*, 2008 WL 4867748, at *3 (S.D. Fla. Nov. 10, 2008)(unreported). Secondly, he must show that the challenged language is unfairly prejudicial and inflammatory. *Id.* Because Rule 7(d) is permissive and not mandatory, the Rule "is strictly construed against striking surplusage." *United States v. Delgado*, 2018 WL 3029282, at *5 (M.D. Ala. Apr. 20, 2018). Moreover, "[a] motion to strike surplusage from an indictment should not be granted 'unless it

is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." *United States v. Brye*, 318 F. App'x 878, 880 (11th Cir. 2009) (quoting *Awan*, 966 F.2d at 426). " 'This is a most exacting standard.' *United States v. Huppert*, 917 F.2d 507, 511 (11th Cir.1990) (quoting, 1 Charles A. Wright, Federal Practice and Procedure § 127 at 424-29 (1982)). Additionally, even when prejudice can be shown, this Court should not strike the information contained in the indictment if it is relevant to the charged offense. *U.S. v. Scarpa,* 913 F.2d 993, 1013 (2nd Cir.1990).

Here, Mr. Oxendine moves this Court to strike the term "kickbacks" because he contends that it is not necessary to describe the money that was sent by his co-conspirators, it is "highly inflammatory" because it "brings to mind images of corrupt politicians," it negates the presumption of innocence and invades the jurors' role as the ultimate fact finders. [Doc. 25 at 3-4].

The Government disagrees, arguing that Mr. Oxendine cannot meet his burden to prove that this term is both irrelevant and unduly prejudicial because it accurately describes the scheme the co-conspirators agreed to undertake.  It is also not unduly prejudicial, it claims, because this Circuit has approved the characterization of similar payments as 'kickbacks' in prior fraud-related  prosecutions. [Doc. 59 at 2; 4-5].

The Government's argument is well-taken. As Mr. Oxendine noted, Black's Law Dictionary defines a "kickback" as "a bribe for routing a job, contract, or order.

Typically comes out of the income generated by the job, contract, or order. Demanded by an official." [Doc. 25 at 3]. In the instant case, the Government alleges that Mr. Oxendine and Dr. Gallups received generous remuneration generated by the illicit conduct the written agreements solicited. Therefore, this definition accurately encapsulates the scheme described in the Superseding Indictment.

Furthermore, this Court does not find the term "kickbacks" to be *unduly* prejudicial. It simply describes the types of financial transactions that allegedly occurred in furtherance of the conspiracy. "[A]ll admissible evidence is prejudicial. The real question is whether the use of the words [in question is] unfairly prejudicial in the particular indictment[.]" *U.S. v. Williams*, 2008 WL 486774, at *4. This Court concludes that this term is not. See, *United States v. Sciandra*, 529 F. Supp. 320, 322 (D.C.N.Y. 1982) (denying defendant's motion to strike the word "sham" from the indictment because it was "not only relevant, but in fact the gist of the case."); See Also, *United States v. Ruble*, 2016 WL 2342709, at *5 (SD. Ga. Apr. 12, 2016)(unreported)(where court found defendant failed to carry his burden of establishing "that the averments are not relevant to the facts the Government may prove at trial or, if that burden is met, establishing that the averments are inflammatory and prejudicial.")(internal citations omitted) and *United States v. Greenhill*, 2018 WL 5659933, at *5 (N.D. Ga. Sept. 20, 2018)(unreported)(where court declined to strike

references to "faith-based humanitarian groups" as incendiary because it was merely a reflection of the evidence introduced at trial, noting that "Defendants, not the Government, selected the customer base that they decided to defraud and that the Government is not mis-characterizing or mis-labeling those groups to prejudice Defendant."); report and recommendation adopted, 2018 WL 5649898 (N.D. Ga. Oct. 31, 2018). Because Mr. Oxendine has failed to establish that the term "kickbacks" is irrelevant and unduly prejudicial, this Court **RECOMMENDS** that the Motion to Strike Surplusage be **DENIED**.

## CONCLUSION

Based on the foregoing reasons, the undesigned **RECOMMENDS** that Defendant's Motion to Dismiss Superseding Indictment, [Doc. 22], be **DENIED**; **RECOMMENDS** that Defendant's Motion to Dismiss Count Two as Time Barred, [Doc. 51], be **DENIED**; **RECOMMENDS** that Defendant's Motion to Suppress Statements, [Doc. 24], be **DENIED**; **ORDERS** that Defendant's Motion for a Bill of Particulars, [Doc. 23], is **DENIED**; and **RECOMMENDS** that Defendant's Motion to Strike Surplusage, [Doc.25], be **DENIED**.

Having now addressed all referred pretrial matters relating to Mr. Oxendine and having not been advised of any impediments to the scheduling of a trial as to him, this case is **CERTIFIED READY FOR TRIAL**.

**IT IS SO RECOMMENDED** this 28th day of August, 2023.


REGINA D. CANNON
United States Magistrate Judge