IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

JOHN W. OXENDINE,

Defendant.

CRIMINAL ACTION

NO. 1:22-CR-00183-SCJ

ORDER

This matter appears before the Court on Defendant's Objections to the Magistrate Court's Report and Recommendation ("R&R") (Doc. No. [66]) to deny his Motions to Dismiss (Doc. Nos. [22, 51], Motion to Suppress Statements (Doc. No. [24]), a Motion to for a Bill of Particulars (Doc. No. [23]), and Motion to Strike Surplusage (Doc. No. [25]).[1] As explained below, the Court hereby **OVERRULES** Defendant's objections (Doc. No. [68]) and **ADOPTS** The Magistrate Judge's R&R.

---

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

## I. BACKGROUND[2]

Defendant has been named in a two-count Superseding Indictment that charges him with crimes involving health care fraud and money laundering. Doc. No. [43]. Count One alleges that he did knowingly and willfully "combine, conspire, confederate, agree, and have a tacit understanding with others known and unknown to the Grand Jury, to commit an offense against the United States, to wit, to knowingly and willfully execute and attempt to execute a scheme and artifice to defraud Aetna, Blue Cross Blue Shield, United Healthcare, and other health care insurance providers, which are health care benefit programs affecting commerce as defined in Title 18, United States Code, Section 24(b), and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Aetna, Blue Cross Blue Shield, United Healthcare, and other health care insurance providers in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347." Id. at 1-2.

---

[2] There are no objections to the R&R's Factual and Procedural Background section. Therefore, the Court has incorporated that section herein.

The Superseding Indictment also states that he and others, known and unknown to the grand jury, allegedly executed this health care fraud scheme by causing "to be submitted to Aetna, Blue Cross Blue Shield, United Healthcare, and other health care insurance providers, fraudulent insurance claims for medically unnecessary Pharmacogenetic, Molecular Genetic, and Toxicology testing. In furtherance of the scheme, physicians associated with Dr. Jeffrey Gallups's ENT practice in the Northern District of Georgia and elsewhere were pressured to order medically unnecessary Pharmacogenetic, Molecular Genetic, and Toxicology testing from a testing lab in Texas (the Lab Company). As part of the health care fraud scheme, the Lab Company and Defendant and Dr. Gallups entered into an agreement whereby Dr. Gallups would receive a kickback of 50% of the net profit for eligible specimens submitted by Dr. Gallups's practice to the Lab Company for Pharmacogenetic, Molecular Genetic, and Toxicology testing. The Lab Company paid the kickbacks to Dr. Gallups through Defendant. Defendant retained a portion of the kickbacks and used a portion of the kickback money to pay certain debts of Dr. Gallups." Doc. No [43], 2.

Additionally, Defendant and Dr. Gallups allegedly persuaded representatives of the Lab Company to order the unnecessary tests "even after the

owner of the Lab Company questioned why an ENT practice would need such testing." Doc. No. [43], 3. The Superseding Indictment also states that Defendant paid a portion of the kickbacks he received by making charitable donations "and paid expenses, including attorney's fees, on behalf of Dr. Gallups. Specifically, [Defendant] made a charitable donation of $150,000 on behalf of Dr. Gallups in or about September 2016. [Defendant] also paid $70,759.54 to a law firm on behalf of Dr. Gallups in or about December 2016. After making these payments, [Defendant] retained over $40,000 of the payments from the Lab Company. All in violation of Title 18, United States Code, Section 1349." Doc. No. [43], at 5-6.

Count Two charges Defendant with conspiring to commit money laundering with others, known and unknown to the grand jury, by conducting and attempting to conduct "financial transactions affecting interstate commerce, which involved the proceeds of a specified unlawful activity, that is, health care fraud, in violation of Title 18, United States Code, Section 1347, knowing that the financial transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and while conducting and attempting to conduct such financial transactions, knowing that the property involved in the financial transactions

4

represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(l)(B)(i)." Doc. No. [43], 6. The Superseding Indictment also includes a forfeiture provision seeking the seizure of any United States currency representing the amount of the proceeds obtained by Defendant as a result of the commission of the charged offenses. Id. at 7.

Defendant was arraigned on the Superseding Indictment on May 17, 2023. Doc. Nos. [7]; [49]. He had previously filed pretrial motions on November 4, 2022, following his arraignment on the original Indictment. Doc. Nos. [22]; [23]; [24]; and [25]. On May 31, 2023, he filed two additional motions: Motion to Dismiss Count Two as Time Barred and Motion to Adopt and Incorporate his previously filed motions. Doc. Nos. [51]; [52]. The latter was granted on August 18, 2023. Doc. No. [65].

## II.   LEGAL STANDARD

"When a party files proper objections [to a Magistrate's Report and Recommendation], the Court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Parties filing objections must specifically identify the findings in which they object. Marsden v. Moore, 847 F.2d

1536, 1548 (11th Cir. 1988). After conducting its *de novo* review, the Court "may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge." Id. The Court reviews the uncontested portions of the Recommendation for clear error. 28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72(b); Middleburg Mgmt., LLC v. Wright, No. 1:19-CV-03518-SDG, 2020 WL 7405668, at *1 (N.D. Ga. Mar. 27, 2020).

### III. ANALYSIS

#### A. Motions to Dismiss

##### 1. *Due Process Clause & Sixth Amendment*

The Magistrate Judge rejected Defendant's claims that the Superseding Indictment violates the Sixth Amendment and Federal Rule of Criminal Procedure 7(c)(1). Defendant asserted that the Superseding Indictment should be dismissed because it fails to allege knowledge of criminal intent and, because the health care fraud statute carries a "heightened burden of intent," a violation of this statute can only be sustained if he is "'shown to have known that the claims submitted were, in fact, false.'" Doc. No. [22], 3. Defendant further argued that the Superseding Indictment is unconstitutionally vague because it does not "include enough facts and circumstances to inform [him] of the specific offense being charged." Id. at 2.

6

Furthermore, he contended that the "Manner and Means" section is factually insufficient because it "vaguely outlines" the conduct that allegedly constitutes conspiracy to commit health care fraud and "fails to allege any element of knowledge on the part of Mr. Oxendine." Id. at 4. In sum, Defendant argued that because the charging document alleges acts that "are not violations of the law," it merely "casts a shadow of culpability upon [him]." Id.

In the R&R, the Magistrate Judge pointed out that "Count One specifically alleges that on September 19, 2015, Mr. Oxendine gave a speech during a meeting sponsored by Dr. Gallups's practice where he told the attending doctors that they needed to order the testing for their patients; tests that the Lab Company falsely represented were medically necessary." Doc. No. [66], 12-13. The Magistrate Judge additionally considered that Count One alleges that "In furtherance of the alleged conspiracy, Dr. Gallups executed written agreements with the Lab Company that explained that his practice would receive 50% of the net profits of the testing it performed and that the Company would retain the remainder" and that "Mr. Oxendine executed similar agreements with the Lab Company that included a provision that 'changed the payment of the 50% kickback from Dr. Gallups's

practice to defendant Oxendine's insurance business." Id. at 13 (quoting the Superseding Indictment at 3–4).

The Magistrate Judge also found it significant that Count One "reveals that the Lab Company submitted claims seeking more than $2,500,000 in payments for laboratory tests ordered by Dr. Gallups's practice," and "states that in June 2016, the Lab Company began sending monthly checks to Mr. Oxendine's insurance services businesses for testing referrals." Id. (citing the Superseding Indictment at 4, 8). More specifically, the Magistrate Judge pointed out that Count I alleges that these monthly payments, commencing with one for $227,066.56, were for tests performed "for patients for whom there was no medical necessity." Id. (citing the Superseding Indictment at 5). Finally, the Magistrate Judge noted that "Count One alleges that portions of the kickbacks paid by Mr. Oxendine to Dr. Gallups were made in the form of charitable donations and attorney's fees, although Mr. Oxendine retained more than $40,000 of the payments he received from the Lab Company." Id. (citing the Superseding Indictment at 6).

Moving on to Count Two of the Superseding Indictment, the Magistrate Judge pointed out that it alleges that "Mr. Oxendine, with the assistance of known and unknown co-conspirators, 'deposit[ed] checks sent to him by the Lab

8

Company into his insurance services business . . . [and] . . . into his own account even though the checks resulted from fraudulent claims submitted by the Lab Company for laboratory tests ordered by Dr. Gallups's practice.'" Id. at 14 (quoting the Superseding Indictment at 7). The Magistrate Judge further found it relevant that Count Two "states that the payments Mr. Oxendine allegedly approved from his business accounts were made to Dr. Gallups's practice at Dr. Gallups's direction." Id.

The R&R concluded that these facts "sufficiently inform Mr. Oxendine of the nature of the facts and circumstances giving rise to the pending charges and put him on notice regarding the particular conduct the Government deems unlawful." Id. In his Objections, Defendant argues that the "indictment at bar fails to allege facts which support even an inference that Mr. Oxendine had knowledge of a conspiracy between himself and others to affect the submission of medically necessary tests."

Having reviewed the Superseding Indictment, this Court agrees with the Magistrate Judge. The facts distilled from the charging document and carefully set out in the R&R are without question enough to inform Defendant of what facts and circumstances give rise to the charges against him and to notify him of what

conduct the Government deems unlawful. Defendant's conclusory Objections otherwise are without merit.

### 2. Timeliness of Count II

The Magistrate Judge rejected Defendant's argument that the Superseding Indictment must be dismissed as untimely. Doc. No. [66]. Specifically, the R&R concludes that the Superseding Indictment alleges criminal conduct that extended into the five-year statute of limitations period--receipt of a check on June 14, 2017. Doc. No. [66], 17.

In his objections, Defendant argues that "if the government cannot connect that one check to the alleged conspiracy, all other alleged offenses fall outside the statutory timeframe and Count Two should be dismissed as time barred." Doc. No. [68], 2. As pointed out by the Magistrate Judge, the government must prove, at trial, that the check Defendant allegedly received was derived from unlawful conduct. Doc. No. [66], 17. However, there is no requirement for the government to shoulder this burden of proof to survive a motion to dismiss. Therefore, the Objections by Defendant have no merit.

B.  **Motion to Suppress Statements**

The Magistrate Judge rejected Defendant's Motion to Suppress Statements in which he argued that statements he made to Special Agents Ryan Campos and Allison Montello during a non-custodial interview at his home are inadmissible because they were obtained in violation of the Fifth Amendment. [Doc. No. [66], 22-23. In making her recommendation, the Magistrate Judge considered the "totality of the circumstances" and concluded that the Government has established by a preponderance of the evidence that Defendant's statements were voluntary and were not the product of coercion. Id. at 23.

To determine if a defendant's statement was voluntary, courts examine "whether the defendant was coerced by the government into making the statement: '[t]he relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception.'" United States v. Mendoza-Cecelia, 963 F.2d 1467, 1475 (11th Cir. 1992) (quoting Colorado v. Connelly, 479 U.S. 157, 170 (1986)). "Among the factors the Court should consider are the defendant's intelligence, the length of his detention, the nature of the interrogation, the use of any physical force against him, or the use of any promises or inducements by police." United States

v. Bhatt, 160 F. Supp. 3d 1359, 1363 (N.D. Ga. 2016) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973)). "Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a [statement]." United States v. Jones, 32 F.3d 1512, 1517 (11th Cir. 1994).

Here, the Magistrate Judge considered the place of interrogation, the demeanor of the participants, the tone of the conversation, Defendant's professional background, and the absence of any promises of leniency or threats of arrest and determined that Defendant's claims of coercion were unsupported by the record. Doc. No. [66], 21-23. In his objections, Defendant takes issue with two factors noted by the Magistrate Judge: Defendant's professional background and the diminutive stature of the two agents who questioned Defendant. However, the Magistrate Judge's recommendation was based on the totality of the circumstance with no emphasis on these two factors. The Court agrees with the Magistrate Judge's determination that there is no evidence of coercion in the record. As such, Defendant's Objections are without merit.

### C. Motion for Bill of Particulars

The Magistrate Judge recommended denial of Defendant's Motion for a Bill of Particulars based on his contention that "the Superseding Indictment fails to adequately inform him of the charges against him beyond simply repeating the language of the statute." Doc. No. [66], 23. She further found that he was not entitled to the seven categories of information he requested in the motion. Id. 24-26.

Federal Rule of Criminal Procedure 7(c)(1) provides that an indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." See Fed. R. Crim. P. 7. Rule 7(f) authorizes the Court to direct the government to file a bill of particulars. Id. "The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." United States v. Warren, 772 F.2d 827, 837 (11th Cir. 1985); see also United States v. Hassoun, 477 F. Supp. 2d 1210, 1227–28 (S.D. Fla. 2007) ("A request for bill of particulars is, *inter alia*, befitting in those instances where defendant seeks further clarity and precision with regard to the charges that he is

13

facing in order to adequately prepare a defense."). A defendant seeking a bill of particulars bears the burden of showing the information requested is necessary and that he or she will be prejudiced without it. United States v. Burgin, 621 F.2d 1352, 1358 (5th Cir. 1980).

The Magistrate Judge pointed out that the Superseding Indictment "supplies a plethora of information regarding the nature of the alleged conspiracies including when [Defendant] and Dr. Gallups initialed the scheme, how they enticed their co-conspirators to join the scheme, what the co-conspirators intended to achieve, and how the alleged crimes were consummated." Doc. No. [66], 25-26. Additionally, the Magistrate Judge described the voluminous discovery the government has provided to Defendant.

Defendant objects to the R&R, arguing that none of the information in the Superseding Indictment adequately informs Defendant of his involvement in the scheme. This is simply a myopic reading of the Superseding Indictment. Defendant has failed to carry his burden of showing the information he has requested is necessary and that he will be prejudiced without it. Therefore, his Objections are without merit.

D.   Motion to Strike Surplusage

The Magistrate Judge recommends that Defendant's Motion to Strike Surplusage, specifically, a request to remove the word "kickback" from the Superseding Indictment, be denied. Doc. No. [66], 28-31. First, the Magistrate Judge found that the definition of "kickback" accurately reflects the scheme described in the Superseding Indictment. Id. at 30. Additionally, the Magistrate Judge found that use of the word "kickback" was not unduly prejudicial. Id.

Federal Rule of Criminal Procedure 7(d) "authorizes the Court to strike surplusage from an indictment on motion of the defendant." Fed. R. Crim P. 7(d). The standard is "surplusage" — meaning something excessive or nonessential. See Merriam-Webster.com (Merriam-Webster Dictionary) (May 2023). A Court thus may strike allegations in an indictment only when "it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." United States v. Awan, 966 F.2d 1415, 1426 (11th Cir. 1992) (quoting United States v. Huppert, 917 F.2d 507, 511 (11th Cir. 1990)). To prevail on a motion under Rule 7, a defendant thus must show, first, that the allegations are not relevant to the charges and, second, that the challenged language is unfairly prejudicial and inflammatory. This is a "most exacting standard." Awan, 966 F.2d at 1426.

15

In his objections, Defendant points out that he is not charged with violating the Anti-Kickback Statute and argues that use of the word "kickback" calls to mind a statute that he is not charged with violating. Defendant further argues that use of the word "kickback" is "nothing but unduly prejudicial." Doc. No. [68], 4.

This Court agrees with the Magistrate Judge that the definition of "kickback" accurately describes what is alleged to have occurred in the Superseding Indictment. Furthermore, the Court agrees that use of the word "kickback" in this context is not unfairly prejudicial. Therefore, the Objections by Defendant are without merit.

## IV. CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Defendant's Objections (Doc. No. [68]) and **ADOPTS** the Magistrate Judge's R&R. Doc. No. [66]. Accordingly, Defendant's Motions to Dismiss (Doc. Nos. [22, 51], Motion to Suppress Statements (Doc. No. [24]), Motion For a Bill of Particulars (Doc. No. [23]), and Motion to Strike Surplusage (Doc. No. [25]) are **DENIED**.

**IT IS SO ORDERED** this __7th__ day of March, 2024.

_____
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE